1    **WO**

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

9    Stephan Herold,                          No. CV18-0011-PHX-DGC

10                Plaintiff,                   **ORDER**

11   v.

12   Andlinger & Company Incorporated;
     VP360 Holdings LLC; Andlinger Capital
13   VP360 LLC; Charles E Ball; and Complete
     Integrated Solutions LLC,
14
                 Defendants.
15

16          Plaintiff Stephan Herold sued Defendants Andlinger & Company, Andlinger

17   Capital VP360 (together "Andlinger"), Charles Ball, VP 360 Holdings ("VP 360") LLC,

18   and Complete Integrated Solutions ("CIS") for breach of contract, fraudulent

19   concealment, tortious interference, and fraudulent transfer arising from a failed financing

20   deal for Herold's company, Visual Pro 360, Inc. ("Visual Pro"). Doc. 1. Andlinger, Ball,

21   and VP360 move to dismiss under Rule 12(b)(2), and (6). Doc. 20. Defendants also seek

22   sanctions. Docs. 20, 41. The motions are fully briefed, and oral argument will not aid in

23   the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For the reasons that follow

24   the Court will grant Defendants' motion.

25   **I.     Background.**

26          The Court accepts Plaintiff's factual allegations as true for purposes of this motion

27   to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because all Defendants argue

that Herold's claims are now precluded based on a prior state adjudication, the Court includes a detailed account of the prior proceedings.

### A. The Underlying Dispute.

Herold is the owner of Visual Pro, an Arizona company that provides mobile video technology for security and safety purposes, such as police body cameras. Doc. 1 ¶ 1. In 2014, Herold began discussions with Ball, managing director of Andlinger & Company, regarding Andlinger & Company potentially investing in Visual Pro. *Id.* ¶¶ 2, 8. In November 2014, Herold, Ball, and Visual Pro's chief executive officer, Jeff White, signed an agreement binding them to "exclusive negotiations concerning $2.3 million in equity funding" for Visual Pro. *Id.* ¶ 2. Ball told Herold that the agreement was necessary to protect both parties because Andlinger would invest time and money in due diligence and Herold would forego other sources of financing and divulge confidential Visual Pro information. *Id.* ¶ 16.

Shortly after entering into the agreement, Herold turned negotiations over to White. *Id.* ¶ 19. In January 2015, Ball and White secretly formed CIS, a Delaware limited liability company, and in February 2015 they transferred the $2.3 million to CIS with Andlinger & Company and White as 70% and 30% owners respectively. *Id.* ¶ 2, 35. Before the money was transferred to CIS, Herold suspected that a side deal existed and initiated Chapter 7 bankruptcy proceedings on behalf of Visual Pro to protect its assets. *Id.* ¶ 26. Ball and White also took Visual Pro property, including its tradenames and other intellectual property, websites, databases, equipment, inventory, customers, and employees. *Id.* ¶¶ 2-3, 23, 29, 32. Ball and White subsequently registered CIS in Arizona and began business operations in Tempe. *Id.* ¶ 2. Visual Pro's loss of the financing deal and its other property forced it into bankruptcy and "destroyed the value of" Herold's employment and stock contracts with Visual Pro. *Id.* ¶¶ 2, 4.

## B.    The State Case.[1]

On May 12, 2016, Herold, his ex-wife, and another equity holder in Visual Pro filed a complaint in Maricopa County Superior Court against White, CIS, and Andlinger. Doc. 20-1 at 2-15; *see Herold v. White*, CV2016-006544 (Maricopa Cty. Superior Ct. May 12, 2016).   The complaint asserted eight claims:   conversion, misappropriation, tortious   interference,   fraudulent   concealment,   common   law   fraud,   negligent misrepresentation, breach of fiduciary duty, and unjust enrichment.  *Id.*

Andlinger moved to dismiss for lack of personal jurisdiction.  Doc. 20-1 at 17-28. After an evidentiary hearing, the court granted the motion, finding Andlinger lacked minimum contacts with Arizona sufficient to support jurisdiction.  Doc. 20-1 at 44-50. Herold repeatedly sought reconsideration on several different grounds, including "newly discovered evidence."  *Id.* at 64-66; Doc. 20-2 at 2-4, 37-39, 52.   The court denied reconsideration and entered final judgment in favor of the Andlinger defendants on February 21, 2017.  Doc. 20-2 at 57-58.  Herold did not appeal, and the state court later denied his request to reopen the time to file an appeal.  Doc. 20-2 at 60-63.

Remaining defendants White and CIS moved to dismiss the state action for failure to state a claim.  The court converted the motion to one for summary judgment and granted the motion on all but two claims.  Doc. 20-1 at 52-62.  The court found that all claims against CIS failed because Herold and the other plaintiffs alleged no damages from CIS's conduct that were personal to them – the claims "belong[ed] only to Visual Pro."  Doc. 20-1 at 53.  With respect to Herold's claims against White, the court found: (1) the misappropriation and conversion claims failed because the property belonged to

---

[1] Defendants ask the Court to take judicial notice of a number of documents filed in Visual Pro's bankruptcy proceedings and an Arizona state case involving many of the parties.  Doc. 20 at 2 n.2, 11 n.10; Doc. 41 at 4 n.4.  Plaintiff does not oppose the request or dispute the authenticity of the documents.  Although courts generally may not consider evidence or documents beyond the complaint when ruling on a Rule 12(b)(6) motion, a court may consider "court filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).  The Court will consider documents that were publicly filed in the related cases.  The Court does not consider the other documents submitted by Defendants, which do not appear to be public information, or information incorporated into the complaint.  *See, e.g.*, Doc. 41-1 at 19, 21.

Visual Pro's bankruptcy estate, not Herold; (2) Herold failed to present evidence supporting a successor liability theory; (3) the fraudulent concealment claim failed for four independent reasons; (4) the fraud and negligent misrepresentation claims failed because Herold presented no evidence of reasonable reliance on any false representation causing injury; (5) the unjust enrichment claim failed because Herold did not allege that he conferred any benefit on White; and (6) Herold created a triable issue on his breach of fiduciary duty and tortious interference claims. *Id.*

## C. The State Case Settlement.

Herold and the other plaintiffs in the state case entered into a settlement agreement with White and CIS. Doc. 41-1 at 145-58. A notice of settlement was filed on January 17, 2018, and the superior court removed the case from the active calendar pending dismissal on March 19, 2018. Doc. 47-4 at 9, 11. In the interim, Herold filed a motion to reinstate the case on the active calendar because the defendants violated the terms of the settlement agreement by sending the settlement check to a third party instead of the agreed upon trust account. Doc 47-4 at 1. On April 26, 2018, the court reinstated the case to the court's active calendar and set the case for trial.[2] Doc. 41-1 at 160-68.

## D. The Bankruptcy Settlement.

On December 15, 2016, the bankruptcy court approved a settlement agreement in Visual Pro's Chapter 7 bankruptcy proceedings. Doc. 20-2 at 98-111; *In re Visual Pro 360, Inc.*, 2:15-bk-00968-GBN (U.S. Bankr. Ct. D. Ariz.). The agreement is signed by White individually and on behalf of CIS and VP360 Holdings, a representative of Andlinger Capital VP360, a representative of Andlinger and Company, Visual Pro's Chapter 7 trustee, and a representative of Southstar Financial, LLC. Doc. 20-2 at 109-11. The agreement is not signed by Herold and does not refer to him.

On March 8, 2018, another judge of this Court dismissed Herold's attempt to appeal the bankruptcy court's approval of the settlement. Doc. 41-1 at 141-68.

---

[2] The motion to reinstate and all subsequent superior court litigation has been before Judge Connie Contes instead of the original judge, Douglas Gerlach.

**E. Dismissal of CIS**

On September 21, 2018, Herold and CIS stipulated to a dismissal of CIS with prejudice, and the Court granted the dismissal. Doc. 48; Doc. 49. Accordingly, the Court will not address CIS's motion to dismiss. *See* Doc. 41.

## II. Andlinger, VP360, and Ball's Motion.

Andlinger, VP360, and Ball argue that Herold is collaterally estopped from asserting that the Court has personal jurisdiction over them because the state court already determined this issue. Doc. 20. Alternatively, the parties argue the Court lacks personal jurisdiction over them, and that Herold lacks standing and fails to state a claim. *Id.*

### A. Issue Preclusion

The Full Faith and Credit Act provides that a state's judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. In determining the collateral estoppel consequences of a state court judgment, federal courts apply the collateral estoppel doctrine of the state where the judgment was rendered.[3] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). "It is well settled that the principles of [collateral estoppel] apply to the issue of *in personam* jurisdiction in the same manner as any other issue." *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 538 (9th Cir. 1983) (emphasis in original).

Under Arizona's collateral estoppel doctrine, Andlinger must show that: (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) the state court entered a valid and final decision on the merits, (4) resolution of the issue was essential to the decision, and (5) there was common identity of the parties. *Hullett v. Cousin*, 63 P.3d 1029, 1034

---

[3] Andlinger's arguments are based on federal collateral estoppel law, but Arizona courts have noted that Arizona's "elements of collateral estoppel [are] virtually identical to [the] federal" requirements. *Corbett v. ManorCare of Am., Inc.*, 146 P.3d 1027, 1033 (Ariz. Ct. App. 2006) (citing *Garcia*, 990 P.2d at 1073).

(Ariz. 2003); *Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1073 (Ariz. Ct. App. 1999). "If the first four elements of collateral estoppel are present, Arizona permits defensive, but not offensive use of the doctrine." *Campbell v. SZL Properties, Ltd.*, 62 P.3d 966, 968 (Ariz. Ct. App. 2003).

A party who is bound by a judgment from a prior suit "cannot escape the estoppel by producing at a second trial new arguments or additional or different evidence in support of the proposition which was decided adversely to him." *Barassi v. Matison*, 656 P.2d 627, 629 (Ariz. Ct. App. 1982). But Arizona courts have acknowledged that "there are special circumstances in which collateral estoppel should not be applied although the technical requirements for application of the doctrine are met." *Tripati v. Forwith*, 219 P.3d 291, 296 (Ariz. Ct. App. 2009) (citing cases and noting that the Restatement (Second) of Judgments § 28 lists several examples of circumstances where collateral estoppel should not apply); *State v. Whelan*, 91 P.3d 1011, 1016 (Ariz. Ct. App. 2004) (noting that the exception in Restatement § 28(2), applicable when there has been an intervening change in law, "has been expressly adopted in Arizona"); *Hibbs v. Calcot, Ltd.*, 801 P.2d 445, 451 (Ariz. Ct. App. 1990) (following one of the Restatement exceptions, and noting that "absent prior decision or statute to the contrary, Arizona courts will follow Restatement of the Law whenever applicable").

Because federal courts "ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" the test applied by the superior court to determine the issue of personal jurisdiction is the same test this Court would apply. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citation omitted). Indeed, because Arizona has authorized its courts to exercise jurisdiction to the maximum extent permitted by the Due Process Clause of the U.S. Constitution, *see* Ariz. R. Civ. P. 4.2(a), the state court relied heavily on federal case law in determining the issue. Doc. 20-1 at 47 n.4, 47-50.

### 1.     Application to Defendants Who Were Named in the State Case.

With respect to Andlinger, who was a defendant in the state case and included in the February 2017 judgment, Herold does not specifically dispute any of the collateral

estoppel elements. *See* Doc. 24 at 7-11. Rather, he repeatedly reargues the merits of personal jurisdiction, disagrees with the superior court's consideration of the evidence, and argues that collateral estoppel does not apply in light of "new evidence obtained from Ball on October 4, 2017." Doc. 24 at 7.

Herold's disagreement with the state court ruling is not a basis for finding that collateral estoppel does not apply. *See Corbett*, 146 P.3d at 1035 (noting that an intervening change in law may warrant an exception to collateral estoppel, but "a misapplication of the law does not[.]").

The "new evidence" Herold cites appears to be deposition testimony from Ball taken in October 2017. Doc. 1-1 at 2-14.[4] Herold focuses on Ball's statement that a holding company associated with Andlinger owns 70% of CIS and White owns the remaining 30%. Doc. 1-1 at 7. But Herold does not explain what makes this testimony new or significant. Although it is not clear that the superior court considered evidence of the precise ownership of CIS, it certainly considered evidence that the Andlinger parties had an interest in CIS. Indeed, the central allegation of the state case and this case is that Andlinger invested $2.3 million in CIS instead of Visual Pro. To the extent that Ball's testimony regarding the CIS ownership breakdown can be considered "new" evidence, Herold has not explained why this evidence was previously unavailable or why it would have impacted the court's decision. *See Tripati*, 219 P.3d at 296 ("Even if we assume without deciding that the existence of new evidence may constitute one such circumstance, [plaintiff] has not shown why he did not offer the relevant evidence to the [first] court . . . [or] alleged it was previously unavailable or that it was recently discovered."); *Bautista v. Park W. Gallery*, No. CV 08-6262 PSG RZX, 2008 WL 5210662, at *2 (C.D. Cal. Dec. 11, 2008) (collecting cases for the proposition that jurisdictional defects "may *not* be cured by alleging [in the second action], for the first

---

[4] The Court considers Ball's testimony and assumes its truth because the testimony is attached to the complaint, central to Herold's claims, and its authenticity is not disputed. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

time, facts which existed prior to dismissal of the previous action") (emphasis in original).

Herold also asserts that Ball "admitted coming back [to Arizona] in May 2015 for CIS activity." Doc. 1 at 2 ¶ 3 (citing Doc. 1-1 at 11-12). Ball's testimony indicates that he attended a conference in Tempe in May 2015, which included an "Andlinger meeting" attended by White and Ball. Doc. 1-1 at 11. This evidence was not presented to the state court, which found that Ball had made only one suit-related visit to Arizona in 2014 for an introductory meeting with Herold to discuss potential financing. *See* Doc. 20-1 at 45. Herold argues that this new evidence of a second visit mandates a different result and warrants relitigation of the issue. The Court disagrees.

First, it is not clear that the evidence would have affected the superior court's conclusion even if it were presented. The meeting occurred after Defendants committed the wrongdoing Plaintiff complains of – secret formation of CIS, transferring of funds intended for Visual Pro to CIS, and theft of Visual Pro property. Thus, the May 2015 meeting could not have given rise to Herold's claims for purposes of specific jurisdiction. Second, Herold has not explained why he could not have presented the evidence to the state court. The meeting occurred almost a year before Herold filed the state case. *Tripati*, 219 P.3d at 296.

Herold also argues that the state court did not consider evidence of CIS conducting business in Arizona. But many of the documents he submits on this point were submitted in the state case with his various motions for reconsideration. *Compare* Doc. 20-2 at 9-20, 31-35, *with* Doc. 1-3 at 11-15, *and* Doc. 1-4 at 7-10. The state court explained that most of the evidence was either submitted as an exhibit and withdrawn at the hearing, not submitted until after the hearing, unauthenticated, or simply insufficient to establish minimum contacts. Doc. 20-1 at 65. The state court noted that the remaining documents consisted of "information that Herold searched for and found on the Internet <u>after</u> the motion to dismiss was granted." Doc. 20-1 at 65 (emphasis in original). Such evidence

warranted "no consideration unless it could not have been discovered before the court's ruling despite the exercise of reasonable diligence." *Id*. (emphasis in original).

Indeed, one of Herold's motions in the state court – the "motion for Rule 37 culprit hearing" – was based on the same argument Herold makes here. Doc. 20-2 at 41-50. The motion argued that Herold had discovered new evidence showing that Andlinger and Ball had misled the court by testifying that they did not do business in Arizona. *Id*. Many portions of that motion are repeated almost verbatim in Herold's response to the motion to dismiss filed with this Court. *Compare id.*, *with* Doc. 24. The superior court rejected Herold's arguments. Doc. 20-2 at 52.

Herold also cites his June 2014 management agreement with Visual Pro, which contains a choice-of-law provision stating "Arizona shall be the venue and choice of law." Doc. 24-1 at 5-6. Herold argues that "[the superior court] never considered [this provision], distinguished it[,] or entered any findings on it." Doc. 24 at 8. But Herold does not dispute that he had a full and fair opportunity to submit this agreement and argue its relevance in the state proceeding. Moreover, Andlinger argues, and the Court agrees, that the agreement is irrelevant to the issue of whether the Andlinger parties are subject to personal jurisdiction because none of the Andlinger defendants are parties to the agreement. Doc. 32 at 7.

Herold submits an April 2018 email from Andlinger's counsel in this case, in which counsel states: "No one is contesting that CIS operates in Arizona." Doc. 24-1 at 16. Herold offers no basis on which the Court can consider this document, which could not have been incorporated into the complaint because it was not sent until after the complaint was filed. But even if the email could be considered, it is duplicative of the other evidence of CIS's operations in Arizona, which Herold had a fair opportunity to present in the state proceeding.

In sum, although Herold has come forward with some specific evidence that was not presented in the state proceeding, the superior court already considered the arguments that evidence supports. The state court acknowledged that Ball made a visit to Arizona

on Andlinger's behalf for a meeting with Herold; Andlinger communicated with Herold and White by a series of phone calls and emails; Andlinger entered into the exclusivity agreement with Visual Pro, an Arizona company; and Andlinger's conduct affected Arizona residents. Doc. 20-1 at 48-50. But the court concluded that these facts did not show purposeful availment because the financing transaction was unilaterally sought out by Herold and his broker. *Id.* Herold solicited the Andlinger parties, not vice versa. *Id.* The fact that Andlinger responded to Herold's solicitation and ultimately entered into an agreement with Visual Pro, and that the injury resulting from Andlinger's decision not to finance Visual Pro was foreseeably suffered in Arizona by an Arizona resident, were insufficient to show that the Andlinger parties purposefully directed activity at Arizona. *Id.* The state court declined to entertain Herold's belated attempt to present evidence of CIS's operations in Arizona because that information was readily available on the Internet before the hearing. Doc. 20-1 at 64-66.

The Court cannot conclude that this case presents circumstances warranting an exception to collateral estoppel. Herold points to no material new evidence that he could not have discovered and presented in the state proceedings. *See Barassi*, 656 P.2d at 630 ("Collateral estoppel will apply as to all issues which were in an earlier case even though some factual matters and legal arguments which could have been presented were not."). The precise issue Herold asks the Court to determine – whether Andlinger & Company and Andlinger Capital VP360 are subject to personal jurisdiction in Arizona – was actually litigated in the state case. The superior court considered briefing on the issue and held an evidentiary hearing. Herold points to nothing about the proceeding that deprived him of a full or fair opportunity to litigate the issue. *See State ex rel. Dep't of Econ. Sec. v. Powers*, 908 P.2d 49, 51 (Ariz. Ct. App. 1995) ("Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."). The court issued a valid, final judgment based solely on the lack of personal jurisdiction (Doc. 20-2 at 57-58), from which Herold could have appealed. Andlinger & Co and Andlinger Capital VP360 were defendants in the

first suit, and they seek to use collateral estoppel defensively to preclude the same plaintiff from relitigating the same issue against them.

Applying the Full Faith and Credit Act and Arizona collateral estoppel law, the Court must give effect to the state court's determination that it did not have personal jurisdiction over Andlinger and Company and Andlinger Capital VP360. "Plaintiff had a full and fair opportunity to establish this Court's jurisdiction over Defendant and failed to do so. She does not now get a do-over." *Bautista*, 2008 WL 5210662, at *2 (internal quotation marks omitted). The Court will dismiss the claims against these defendants.

### 2. Application to Defendants Who Were Not Named in the State Case.

VP360 and Ball were not parties to the state case. The state court only addressed whether the court had personal jurisdiction over Andlinger.

VP 360 and Ball argue that despite this distinction, the issue is precisely the same because Herold asserts the same facts in support of jurisdiction against Ball and VP360 as he asserted against Andlinger. Doc. 20 at 7. In other words, the allegations and arguments are the same – Herold has simply added the names of Andlinger's agent who took many of the key actions on Andlinger's behalf, and the holding company Andlinger created for the purpose of wiring the $2.3 million to CIS. *Id.* Herold does not clearly respond to these arguments, other than to say that collateral estoppel does not apply because these are different parties. *See* Doc. 24 at 8.

Under the Restatement, several factors may be relevant when "there is a lack of total identity" between the issues presented in the first and second proceedings, including whether there is a "substantial overlap between the evidence or argument to be advanced" and whether the claims in the two proceedings are "closely related." Restatement § 27 cmt. c.

Herold acknowledged in the state proceeding and in this case that he considers the various Andlinger parties to have acted together as one entity. *See* Doc. 1 at 4 ¶ 11 (alleging that the "legal separateness between the Andlinger companies, Ball and CIS should be disregarded and defendants treated as a single entity or agents of each other");

Doc. 20-1 at 69 (arguing that the superior court's order "minimizes the contacts that Andlinger through its agent Charles Ball targeted" to Arizona); Doc. 20-2 at 66-67 (arguing that the state court had jurisdiction over Andlinger based on "the incessant contacts that Charles Ball, Andlinger's authorized agent, had with" Herold in Arizona). His jurisdictional allegations in the state case and this case are substantially similar despite the addition of two new named defendants. *Compare* Doc. 1 at 2-3, *with* Doc. 20-1 at 2-3, *and* Doc. 20-2 at 66-67. To establish jurisdiction over Ball, Herold asserts Ball's actions on behalf of Andlinger, which were addressed in the state proceeding.

Herold's specific jurisdiction theory in the state case was that "Andlinger through its authorized agent [wa]s soliciting and processing funding transactions in Arizona for an Arizona corporation . . . such as the $2.3 million funding transaction at bench." Doc. 20-2 at 67. The state court's order explicitly addressed this theory and treated Ball as the equivalent of Andlinger in addressing personal jurisdiction. *See* Doc. 20-1 at 45-50 (referring to "Andlinger (i.e., Ball)" and to Ball as "Andlinger's representative," and discussing at length Ball's actions on behalf of Andlinger related to the issue of personal jurisdiction). Herold advances the same theory now. *See* Doc. 1 at 2-3 (alleging that Ball "substantially assisted the fraudulent diversion of the $2.3 million from [Visual Pro] to CIS" and ratified CIS's "conversion of assets and IP"; and VP360 Holdings "wired the $2.3 million to CIS and carried out the conspiratorial agreement to defraud Herold and Arizona resident"); Doc. 24 at 7-11.

If the Court were to consider the issue of personal jurisdiction over Ball and VP360 Holdings, it would consider the same arguments, the same law, and substantially the same evidence as the state court. Under these circumstances, the Court finds that the issue of personal jurisdiction over Ball and VP360 Holdings is the same issue that was actually litigated in the state case. *See Patent Rights Prot. Grp. v. Cadillac Jack, Inc.*, No. 208-CV-00660-KJD-RJJ, 2009 WL 2242674, at *2 (D. Nev. July 27, 2009) (finding that plaintiff was precluded from relitigating personal jurisdiction over a new defendant

named in the case even though it was not a defendant in the prior suits, because the prior suits considered personal jurisdiction over "comparable" defendants, and the "jurisdictional issues in this action are sufficiently similar and material").

As explained above, Herold had a full and fair opportunity to litigate the issue, and the state court entered a final valid judgment that necessarily decided the issue against him. The Court will dismiss Herold's claims against Ball and VP360 because he is precluded from relitigating whether the Court has personal jurisdiction over them. *See Food for Health Co. v. 3839 Joint Venture*, 628 P.2d 986, 990 (Ariz. Ct. App. 1981) ("[O]nce a party has had his day in court and lost, he does not get a second chance against a different party on the same claim."). The Court will not address Andlinger, VP 360, and Ball's other arguments because dismissal is appropriate under the doctrine of collateral estoppel.

**III.    Leave to Amend.**

Herold seeks leave to amend his complaint in the event the Court grants either motion. Doc. 24 at 3; Doc. 45 at 15. "Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Because the Court concludes that the claims against Defendants are precluded by collateral estoppel, no amendment could cure that defect. *See Suggs v. Wichard*, No. CV-26-03252-PHX-GMS, 2016 WL 6648168, at *4 (D. Ariz. Nov. 10, 2016) ("Leave to amend a complaint may be denied as futile where a plaintiff's claims are barred by collateral estoppel."). The Court therefore denies Herold's leave to amend.

**V.    Sanctions.**

Defendants seek an award of their fees and costs as a sanction. Doc. 20 at 1; Doc. 41 at 1. While federal courts possess the inherent power to impose sanctions for conduct that abuses the judicial process, "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). Courts may impose sanctions "when a filing is frivolous, legally unreasonable, or without factual

foundation, or is brought for an improper purpose." *See* Fed. R. Civ. P. 11(c); *Estate of Blue v. Cty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997). Courts must "exercise extreme caution" in imposing Rule 11 sanctions. *Larez v. Holcomb*, 16 F.3d 1513, 1522 (9th Cir. 1994); *see also Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (Rule 11 sanctions are to be reserved for "rare and exceptional" cases). Furthermore, Rule 11 sanctions are imposed at the Court's discretion. *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995) ("Although courts may impose sanctions . . . they are not required to do so.").

CIS argues that sanctions are warranted "for Plaintiff's bad faith abuse of the system and attempted circumvention" of the state court ruling. Doc. 41 at 1 (citing *Cannon v. Loyola Univ. of Chicago*, 609 F. Supp. 1010, 1017 (N.D. Ill. 1985)). Andlinger argues that Herold should be sanctioned for his "groundless attempt to circumvent a state court judgment[.]" Doc. 20 at 1. Herold argues that Defendants have not complied with Rule 11, and in any event sanctions are unwarranted. Doc. 45 at 1-2.

The Court will not impose sanctions. Although Defendants' motion to dismiss will be granted, the Court cannot conclude that Herold's arguments are so frivolous as to warrant a monetary penalty. *See Bautista v. Park W. Gallery*, 388 F. App'x 635, 636 (9th Cir. 2010) (district court did not abuse its discretion in denying fees where defendants obtained dismissal in a second action based on collateral estoppel on the issue of personal jurisdiction).

**IT IS ORDERED**:

1.  Defendants Andlinger & Company Incorporated, VP360 Holdings LLC, Andlinger Capital VP360 LLC, and Charles Ball's motion to dismiss (Doc. 20) is **granted**.

2.  Plaintiff Stephan Herold's request to amend the complaint is **denied**. The Clerk shall terminate this case without further order of the Court.

3.    Defendants' requests for sanctions (Doc. 20 at 1; Doc. 41 at 1) are **denied**.

4.    The motions for oral argument (Docs. 22, 26) are **denied**.

Dated this 2nd day of October, 2018.


David G. Campbell
Senior United States District Judge